UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOBI GAINES,<br>          Plaintiff,<br>     v.<br>KARL GREIGORE,<br>          Defendant. | Case No. 23-cv-06195-RMI<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 24 |

Now pending before the court is Defendant's Motion for Summary Judgment (dkt. 24), seeking summary judgment in favor of Defendant Greigore (as to Plaintiff's Fourteenth Amendment excessive force claim) on the merits and on qualified immunity grounds. Plaintiff has not filed an opposition, or otherwise communicated with the Court, despite being provided a reminder and an extension. (dkt. 29). The Court will still look to the merits of the Motion and for the reasons stated below, Defendant's Motion is granted.

## MOTION FOR SUMMARY JUDGMENT

## BACKGROUND

Plaintiff, at detainee at Santa Rita Jail, sued Alameda County Sheriff's Office Correctional Deputy Gregoire pursuant to 42 U.S.C. § 1983, for excessive force. Plaintiff alleges that on September 10, 2022, Gregoire searched his cell after observing what appeared to be the ingredients to make homemade alcohol. (dkt. 10 at 1). Gregoire then escorted Plaintiff out of the cell where he repeatedly squeezed Plaintiff's neck despite Plaintiff telling him to stop. (*Id*.) Upon arriving at a different holding cell, Gregoire slammed Plaintiff against the wall while handcuffed and placed his body against Plaintiff with Plaintiff's arm at an awkward angle. (*Id*. at 2). Gregoire then raised Plaintiff's handcuffed arms and Plaintiff felt pain in his arm and shoulder and he felt

1  two pops in his shoulder. (*Id*.) Gregoire told Plaintiff to comply and stop moving as he yanked
2  Plaintiff's arm and Plaintiff felt it pop out for a second. Gregoire then removed the handcuffs. (*Id*.
3  at 3).

4  **Undisputed Facts**

5  The salient facts are undisputed. Defendant has submitted video evidence in support of the
6  motion and Plaintiff has not filed an opposition to address the evidence or arguments. During the
7  relevant time, Plaintiff was a maximum-security detainee. Def. Mot. (dkt. 24) Gregoire Decl. ¶ 4.
8  Maximum-security level detainees generally consist of violent offenders. *Id*. On September 10,
9  2022, Gregoire was conducting a walk-through of A-Pod where Plaintiff was housed. *Id*. ¶¶ 4-5.
10 Gregoire observed in Plaintiff's cell the possible makings of a prohibited alcoholic drink. *Id*.
11 Gregoire entered the cell which housed Plaintiff and his cellmate and smelled smoke within the
12 cell. *Id*.

13 Gregoire escorted Plaintiff's cellmate out of the cell to a temporary holding cell and
14 returned to escort Plaintiff to a separate temporary holding cell in order to search their cell for
15 contraband. *Id*. ¶ 7; Ex. D, Gregoire Body Worn Camera footage 9:25-12:00. Gregoire explained
16 to Plaintiff that he was conducting an investigation and Plaintiff needed to "cuff up," a command
17 to alert the detainee that they will be placed into handcuffs. Gregoire Decl. ¶ 6; Ex. D 12:00-12:50,
18 14:15-14:20. Plaintiff did not comply with the order to be handcuffed, but Gregoire was
19 eventually able to handcuff Plaintiff. Ex. D 14:30-14:50.

20 Gregoire then escorted Plaintiff out of the cell and down the stairs. *Id*. 15:00-15:28.
21 Gregoire had one hand on Plaintiff's left shoulder area and his other hand on Plaintiff's right arm,
22 to guide him down the stairs. *Id*. Once down the stairs, Gregoire put his hand on the back of
23 Plaintiff's neck for approximately two or three seconds. *Id*. 15:29-31. Plaintiff asked, "(w)hy the
24 [expletive] [are] you grabbing my neck like that?" *Id*. Plaintiff did not appear in distress or injured.
25 *Id*.

26 Gregoire continued to walk with Plaintiff and then placed him inside a temporary holding
27 cell. *Id*. 15:53. Gregoire removed the handcuffs from Plaintiff's left wrist and told Plaintiff to put
28 his left hand on top of his head. *Id*. 16:00. Plaintiff did not comply and put his left hand down to

United States District Court
Northern District of California

2

his side. *Id*. Gregoire attempted to put Plaintiff's left hand on top of his head, while still holding Plaintiff's right hand and repeatedly told him to comply and put his left hand on top of his head. *Id*. 16:00-1620. Plaintiff again did not comply. *Id*. Gregoire twisted Plaintiff's arms around his body, in order to get Plaintiff to comply. *Id*. Gregoire then leaned Plaintiff on the wall and told him to put his hand on top of his head. *Id*. 16:14-16:20. Plaintiff finally raised his left hand to his head and permitted Gregoire to remove the handcuffs from his right wrist. *Id*. 1620-16:26.

Plaintiff did not have any visible injuries, did not state that he was injured, or request any medical care. *Id*. 16:20-16:35.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g., Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment, pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). To prove an

3

excessive force claim under Section 1983, a pretrial detainee must show only that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. "A court (judge or jury) cannot apply this standard mechanically." *Id*. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. at 396).

A nonexhaustive list of considerations that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Because the *Kingsley* standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (*en banc*). A pretrial detainee can prevail by providing "'*objective* evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Id*. (quoting *Kingsley* at 397-98)).

**DISCUSSION**

The undisputed facts demonstrate that Gregoire did not use excessive force and is entitled to judgment as a matter of law. Plaintiff's allegations in the complaint are refuted by the video evidence from the body warn camera. Gregoire escorted Plaintiff out of his cell and down the stairs and kept his hands on Plaintiff's shoulder and arm. Gregoire placed his hand on Plaintiff's neck for two to three seconds, but did not squeeze Plaintiff's neck, contrary to Plaintiff's allegations. This brief touch was not excessive force.

Contrary to Plaintiff's allegations, Gregoire did not slam Plaintiff into the wall while handcuffed when they entered the temporary holding cell. It is undisputed that Gregoire was attempting to remove the handcuffs during this incident. Gregoire removed the handcuffs from

4

1    Plaintiff's left wrist, but Plaintiff did not comply with repeated instructions to put his left hand on
2    his head. Gregoire did twist Plaintiff around, while holding his arms, in order to have Plaintiff
3    comply, but this was a *de minimis* amount of force. This was also so Gregoire could remove the
4    handcuffs from Plaintiff's right hand. While Plaintiff was leaned against the wall, he was not
5    slammed and there was no force. At the time of the incident, Plaintiff did not say that he was
6    injured or needed medical care.

7         A review of the undisputed facts and the factors set forth in *Kingsley*, support Gregoire's
8    argument that he is entitled to summary judgment and the minor amount of force used did not
9    violate Plaintiff's constitutional rights. Gregoire only used a small amount of force, the twisting of
10   arms with a maximum-security detainee who ignored repeated commands to comply, in order to
11   have his handcuffs removed. The video evidence did not show any injury, nor did Plaintiff
12   complain of any injury at that time. "An inmate who complains of a 'push or shove' that causes no
13   discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*,
14   559 U.S. 34, 38 (2010); *Baker v. Clearwater County*, 2023 WL 3862511, at *3 (9th Cir. 2023) (A
15   deputy's use of an "arm bar" was not excessive force even where a suspect offers no active
16   resistance and poses no immediate security threat. An officer is entitled to use a reasonable degree
17   of force to handcuff a suspect). Gregoire did not use excessive force in violation of the Fourteenth
18   Amendment and is entitled to summary judgment.

19        **Qualified Immunity**

20        The defense of qualified immunity protects "government officials . . . from liability for
21   civil damages insofar as their conduct does not violate clearly established statutory or
22   constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457
23   U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or
24   those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley*
25   *v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about
26   the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a
27   claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an
28   actual constitutional right and whether such right was clearly established such that it would be

5

clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 58 U.S. 73, 79 (2017) (per curiam); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104-08 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances, where officer may not have been in apparent danger but believed woman was a threat to her housemate).

The Court has not found a constitutional violation, and even if there was a violation, Gregoire would be entitled to qualified immunity. It would not be clear to a reasonable deputy that the *de minimis* use of force in this situation would be a constitutional violation, when a maximum-security detainee was not complying with instructions. *See Brown v. Baudino*, 840 F. App'x 263 (9th Cir. 2021) (brief use of pepper spray followed by immediate medical attention was objectively reasonable when detainee was a high security detainee and did not actively resist deputies but refused to get off the floor and went limp when they tried to lift him); *Brown v. Los Angeles Sheriff Dept.*, Case No. 15-0843 RMO (JEM), 2021 WL 1554921, at *7 (C.D. Cal. Mar. 29, 2021) (deputies' use of force was objectively reasonable when high risk detainee was verbally resisting, and then his knee gave out and deputies pushed him against a wall and then had to use force to put detainee in his cell); *O'Neal v. Smith*, Case No. 11-803 DDP (MAN), 2015 WL 10938258, at *4, 8-9 (C.D. Cal. July 28, 2015) (deputy's use of force was objectively reasonable

6

when he bent a detainee's wrist in to handcuff detainee who was resisting), *aff'd*, 714 F. App'x 754 (9th Cir. 2018). The facts of the instant case are not as egregious as the above cases. Gregoire is entitled to qualified immunity.

## CONCLUSION

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment (dkt. 24) is **GRANTED**. A separate judgment shall issue and the Clerk is requested to close this case.

**IT IS SO ORDERED.**

Dated: December 20, 2024

ROBERT M. ILLMAN
United States Magistrate Judge